[Cite as *State v. Chaffins*, 2012-Ohio-4011.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PUTNAM COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,     CASE NO. 12-12-05

 v.

JOHN MATTHEW CHAFFINS,    O P I N I O N

 DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2011 CR 77

Judgment Affirmed

Date of Decision: September 4, 2012

APPEARANCES:

 *F. Stephen Chamberlain* for Appellant

 *Todd C. Schroeder* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant John M. Chaffins ("Chaffins") brings this appeal from the judgment of the Court of Common Pleas of Putnam County. The trial court found Chaffins guilty of one count of robbery and sentenced him to eight years in prison. For the reasons set forth below, the judgment is affirmed.

{¶2} On September 9, 2011, Bob's Carry Out was robbed. The Putnam County Grand Jury on October 11, 2011, indicted Chaffins on one count of robbery for the crime. Chaffins entered a plea of not guilty to the indictment on October 24, 2011. A jury trial was held on January 9, 2012. The jury returned a verdict of guilty. On January 13, 2012, the trial court sentenced Chaffins to a term of eight years in prison. Chaffins appeals from this judgment and raises the following assignments of error.

**First Assignment of Error**

**The trial court erred in sentencing [Chaffins] to a mandatory term of imprisonment for eight years to the Ohio Department of Rehabilitation and Correction.**

**Second Assignment of Error**

**[Chaffin's] conviction was against the manifest weight of the evidence and [Chaffin's] conviction lacked sufficient evidence as to all elements of the offense.**

**Third Assignment of Error**

**[Chaffins] was denied the effective assistance of counsel.**

In the interest of clarity, the assignments of error will be addressed out of order.

**{¶3}** In the second assignment of error, Chaffins alleges that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. When determining whether there is sufficient evidence to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 (1991), ¶ 2 of the syllabus.

**{¶4}** Here, the testimony was as follows. Nancy Dotson ("Dotson") testified that she was working at Bob's Carry Out on September 9, 2011. Tr. 205. Around 11:00 p.m., two men dressed all in black with black nylon over their faces walked in through the exit of the drive-thru. *Id.* One backed her away from the register while the other opened it. Tr. 206. The one at the register had a tire iron and threatened her with it. *Id.* After removing more than $500 from the register, the two men ran out the exit and the police were called. Tr. 209-10.

**{¶5}** Dan Groff ("Groff") was also working at Bob's Carry Out that night. Tr. 224. He witnessed the whole robbery. Tr. 224. Groff testified that the two criminals ran out the exit into the dark carrying the tire iron. Tr. 228.

**{¶6}** Leipsic Police Officer Kyle Stechschulte ("Stechschulte") testified that he came to the scene with his canine. Tr. 242. Stechschulte testified that the

dog traced the ground disturbance from the carry out to 202 E. Elm Street. *Id.* At that location, the dog lost the track, so it was presumed the robbers drove away. *Id.*

**{¶7}** Don Harter ("Harter") testified that he owned the home at 202 E. Elm Street. Tr. 247. On September 9, 2011, shortly after 11:00 p.m., Harter heard a loud car door slam in front of his home. *Id.* The next day, Harter found a red flashlight and a tire iron in his yard. Tr. 248. The items were not there the previous evening. *Id.* He then contacted the police because he had heard about the robbery. Tr. 249.

**{¶8}** Continental Police Chief Arnie Hardy ("Hardy") testified that he was called to the scene of a robbery at Bob's Carry Out on September 9, 2011. Tr. 162. The next day he responded to a call at Harter's home. Tr. 163. There he claimed the red flashlight and the tire iron as evidence. Tr. 164. On September 15, 2011, Hardy went to a field off of County Road 209 where black clothing had been found abandoned in a field. Tr. 167. The clothing consisted of black sweatpants, a black hooded sweatshirt, a black nylon "dew rag," and black gloves with striping. Tr. 169. This field was within walking distance of both Newsome's mothers home and the home of Jeff and Amanda Weible. State's Exhibits 21 and 22.

{¶9} Stacy Brooks ("Brooks") was dating Josh Newsome ("Newsome") at the time. Tr. 254. She knew Chaffin as he was a friend of Newsome. *Id*. Newsome is the alleged co-defendant in the robbery at issue. On the evening of the robbery, Brooks overheard Chaffin say that he was going to get money that evening. Tr. 258. Newsome and Chaffin left her apartment in Defiance that evening dressed all in black and wearing "dew rags." Tr. 261. She saw Chaffin carrying a red flashlight when he left. Tr. 262. The next day, Newsome returned to her apartment and hid some money in the microwave. Tr. 267. Brooks identified the clothing found in the field as being the items worn by Chaffin and Newsome when they left her apartment on September 9, 2011. Tr. 271.

{¶10} Lynda Eveleth is a scientist that works for the Bureau of Criminal Investigation and Identification. She testified that she tested the "dew rags" sent to her for DNA evidence. The DNA found on one of the dew rags belonged to Chaffin. Tr. 285. The DNA found on the second dew rag belonged to Newsome. Tr. 289.

{¶11} Alex Recker ("Recker") was a cell mate of Chaffin while he was awaiting trial. Recker testified that Chaffin told him that the original plan was to rob a carry out in Defiance, but it was too busy, so Chaffin and Newsome went to Continental and robbed Bob's Carry Out instead. Tr. 309. Recker also testified that Chaffin told him that Newsome's sister drove them to the carry out and

dropped them off behind it. Tr. 310. Chaffin and Newsome then entered the carryout where Newsome threatened the clerk with a tire iron and emptied the register. *Id.* Chaffin and Newsome then ran out the back and went to be picked up by the sister. *Id.* Later, Chaffin and Newsome were afraid they would be caught so they dropped the clothes in a field and ran away. Tr. 311. Candace Bigelow, an acquaintance of Chaffin's, testified that Chaffin had told her before the trial that he was nervous about having told Recker his secrets. Tr. 325.

{¶12} Amanda Weible ("Amanda") testified that Chaffin was a friend of her and her husband. On September 10, 2011, Amanda awoke to find that Chaffin had slept on her couch the previous night. Tr. 338. Chaffin had then suggested they go to breakfast and had paid for the food with a "wad" of cash. Tr. 340.

{¶13} Jeff Weible ("Jeff") testified that he is married to Amanda and that Chaffin was a friend. Jeff also testified that Chaffin arrived at his house shortly after midnight on September 10, 2011. Tr. 347. Chaffin asked to spend the night on the couch and he agreed. *Id.* Chaffin was still there when he left for work the next morning. *Id.* Jeff also testified that he and Chaffin had spoken about Chaffin's lack of financial resources. Tr. 349. Jeff had even offered to pay Chaffin to do odd jobs around his farm so that Chaffin would have some money. *Id.*

**{¶14}** Viewing this evidence in a light most favorable to the prosecution there is sufficient evident to support the conviction. There was testimony that Chaffin had admitted to committing the robbery. There was also testimony that before the robbery, Chaffin said he was going to get money and that he was dressed all in black when he left that evening. The next day he suddenly has money. Clothing matching that worn by the robbers was found abandoned in a field and had Chaffin's DNA. Based upon Chaffin's statements against interest and the other evidence, the evidence was clearly sufficient to support the conviction.

**{¶15}** The next question is whether the conviction is against the manifest weight of the evidence. Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution.

> **Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"**

*State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 514 (citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id.

Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

{¶16} In this case, the evidence, as set forth above, does not weigh heavily against conviction. The circumstantial evidence indicates that Chaffin and Newsome robbed Bob's Carry Out. In addition, Chaffin confessed his involvement to Recker while awaiting trial. Thus, the conviction is not against the manifest weight of the evidence. The second assignment of error is overruled.

{¶17} In the first assignment of error, Chaffin argues that the trial court erred by sentencing him to a mandatory term of eight years in prison. Chaffin argues that the trial court erred in sentencing him to a mandatory term of imprisonment rather than a stated term when prison is mandatory.

> **"Mandatory prison term" means any of the following:**
>
> **(1) Subject to division (X)(2) of this section, the term in prison that must be imposed for the offenses or circumstances set forth in divisions (F)(1) to (8) or (F)(12) to (18) of section 2929.13 and division (B) of section 2929.14 of the Revised Code. Except as**

**provided in sections 2925.02, 2925.03, 2925.04, 2925.05, and 2925.11 of the Revised Code, unless the maximum or another specific term is required under section 2929.14 or 2929.142 of the Revised Code, a mandatory prison term described in this division may be any prison term authorized for the level of offense.**

R.C. 2929.01(X). This court has previously interpreted a mandatory sentence to mean that if prison is mandatory, any sentence imposed within the range of sentences is mandatory. *State v. Thomas*, 3d Dist. No. 1-04-88, 2005-Ohio-4616. Here, the trial court was required to impose a prison term due to Chaffin's prior record. R.C. 2929.13(F)(6). The prison term of eight years was within the statutory range. R.C. 2929.14. Thus, based upon the logic set forth by this court in *Thomas*, the trial court did not err in imposing a mandatory prison term. The term it chose was eight years, which was within the statutory range. The first assignment of error is overruled.

{¶18} Finally, Chaffins argues in his third assignment of error that he was denied effective assistance of counsel. "Reversal of convictions on ineffective assistance requires the defendant to show 'first that counsel's performance was deficient and, second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.'" *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 105, 772 N.E.2d 81. The defendant must show that there was a reasonable probability that but for counsel's error, the result of the trial would

have been different.  Id. at ¶ 108.  *State v. Baughman*, 3d Dist. No. 1-10-34, 2010-Ohio-4951.

{¶19} Here, Chaffin claims that his trial counsel was ineffective because counsel failed to file any motions.  Chaffin specifically argues that counsel should have investigated whether there were any deals between Recker and the State for its testimony.  However, Chaffin points to no evidence that any such deal existed.  In addition, Recker was questioned about any consideration for his testimony by both Chaffin's counsel and the State.  Recker maintained that he had no deal and that he was granted judicial release prior to telling the State about his conversation with Chaffin.  The record does not indicate that the outcome would have been different if trial counsel had filed any pretrial motions.  Thus, counsel was not ineffective and the third assignment of error is overruled.

{¶20} Having found no error prejudicial to Chaffin, the judgment of the Court of Common Pleas of Putnam County is affirmed.

***Judgment Affirmed***

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**